UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRACEY S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-98 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Tracey S., on March 12, 2019. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Tracey S., filed an application for Disability Insurance Benefits on July 5, 2015, alleging a disability onset date of November 12, 2012. (Tr. 15). The Disability Determination Bureau denied Tracey S.'s application initially on November 9, 2015, and again upon reconsideration on May 19, 2016. (Tr. 15). Tracey S. subsequently filed a timely request for a hearing on June 3, 2016. (Tr. 15). A video hearing was held on November 28, 2017, before Administrative Law Judge (ALJ) Mario Silva, and the ALJ issued an unfavorable decision on May 2, 2018. (Tr. 15-27). Vocational Expert (VE) Tricia Muth appeared at the hearing. (Tr. 15). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Tracey S. last met the insured status requirement of the Social Security Act on March 31,

---
[1] To protect privacy, the plaintiff's full name will not be used in this Order.

2018. (Tr. 17). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Tracey S. had not engaged in substantial gainful activity since February 25, 2015, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 17).

At step two, the ALJ determined that Tracey S. had the following severe impairments: lumbar degenerative disc disease with sciatica, fatty liver, poly-arthritis, inflammatory arthritis, right shoulder degenerative joint disease, obesity, hypertension, cardiac arrhythmia, mild degenerative changes of the right ankle, and right foot mild hallux valgus deformity with bunion formation. (Tr. 18). The ALJ found that these severe impairments significantly limited Tracey S.'s ability to perform basic work activities. (Tr. 18).

The ALJ determined that Tracey S.'s medically determinable mental impairment of anxiety disorder did not cause more than a minimal limitation on her ability to perform basic mental work activities, and therefore was non-severe. (Tr. 18). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

(Tr.18).

The ALJ found that Tracey S. had mild limitations in understanding, remembering, or applying information; no limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and no limitations adapting or managing herself. (Tr. 18). The ALJ indicated that because Tracey S.'s mental impairment caused no more than "mild" limitations in any of the functional areas it was non-severe. (Tr. 18).

At step three, the ALJ concluded that Tracey S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ determined that Tracey S.'s impairments, considered singly and in combination, did not meet or medically equal the criteria in listings 1.02, 1.04, 4.05, and 14.09. (Tr. 19). The ALJ also indicated that he considered Tracey S.'s obesity and any additional and cumulative effects related to her obesity. (Tr. 19).

After consideration of the entire record, the ALJ then assessed Tracey S.'s residual functional capacity (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift up to 20 pounds occasionally, lift and carry 10 pounds frequently. The claimant can sit for up to 6 hours in an 8-hour workday but can only stand/walk for 2 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can do more than occasional overhead reaching with the right upper extremity. The claimant can do frequent but not constant handling and fingering. The claimant is to avoid all exposure to unprotected heights and is limited to no more than moderate exposure to environmental irritants such as fumes, odors, dusts, or gases. The claimant is unable to engage in jobs that require the operation of foot controls with either the right or left foot. The claimant is limited to work that can be performed on even terrain.

(Tr. 20). The ALJ explained that in considering Tracey S.'s symptoms he followed a two-step process. (Tr. 20). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Tracey S.'s pain or other symptoms. (Tr. 20). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Tracey S.'s functioning. (Tr. 20).

The ALJ found that after considering the evidence Tracey S.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 21). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 21). The ALJ noted that Tracey S.'s statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because the record showed treatment for her conditions but not limitations to the extent that she had alleged. (Tr. 21).

At step four, the ALJ determined that Tracey S. was unable to perform any past relevant work. (Tr. 25). Considering Tracey S.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including order clerk (18,000 jobs nationally), charge account clerk (15,000 jobs nationally), and document preparer (91,000 jobs nationally). (Tr. 26). The ALJ found that Tracey S. had not been under a disability, as defined in the Social Security Act, from February 24, 2015, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to

4

support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be

5

conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Tracey S. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Tracey S. has argued that: (1) the ALJ erred in assessing the RFC; and (2) the ALJ erred in assessing her subjective symptoms pursuant to SSR 16-3p.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—

including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v.*

7

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Tracey S. has presented multiple challenges to the ALJ's RFC assessment. First, she has argued that the ALJ erred in failing to limit her to work that involved no stooping. The ALJ found that Tracey S. occasionally could balance, stoop, kneel, crouch, and crawl. (Tr. 20). In October of 2015, a consultative examination was performed by Dr. J. Smejkal, M.D., who reported that Tracey S. was unable to stoop and squat. (Tr. 23). The ALJ found that the treatment record did not indicate an inability to stoop or squat. (Tr. 24). Therefore, he assigned no weight to Dr. Smejkal's conclusion that Tracey S. was unable to stoop. (Tr. 24).

Tracey S. contends that the ALJ has failed to identify any treatment note that measured her ability to stoop. She asserts that while the ALJ indicated that the record generally supported his determination that she could occasionally, as opposed to never, stoop, the ALJ cited no actual evidence in support. Moreover, Tracey S. contends that the ALJ's failure to include a limitation that precluded her from stooping was not harmless because the VE may have testified that there were no jobs that she could perform.

However, the court finds that any error by the ALJ for failing to limit Tracey S. to work that involved no stooping was harmless. *See* **Lemke v. Berryhill**, 2017 WL 3169060, at *2 (W.D. Wis. July 26, 2017); **Jordan v. Astrue**, 2009 WL 3053715, at *15 (S.D. Ind. Sept. 18, 2009); *see also* **Parker v. Astrue**, 597 F.3d 920, 924 (7th Cir. 2010) (explaining harmless error exception to *Chenery* doctrine). Based on information in the Dictionary of Occupational Titles, none of the jobs proposed by the VE required any stooping. The positions of charge account clerk, order clerk, document preparer all list "not present" for stooping. *See* DICOT 205.367-

014, 209.567-014, 249.587-018. Therefore, even if the ALJ had limited Tracey S. to no stooping, he still would have found her not disabled.

Next, Tracey S. has argued that the ALJ failed to explain if or how he accounted for her significantly reduced grip strength in assessing the RFC. At the consultative examination, Dr. Smejkal using Dynamometer testing found that Tracey S. was able to generate 12.1 kilograms of force using both her right and left hand. (Tr. 367). Tracey S. contends that the ALJ overlooked these objectively abnormal findings of diminished grip strength. She asserts that the ALJ instead relied on the contrary portion of Dr. Smejkal's opinion that reported that she had normal grip strength at 5/5 bilaterally. (Tr. 367). Tracey S. contends that given the test results, coupled with evidence of pain, swelling, and numbness in her hands, the ALJ erred by limiting her to frequent handling and fingering rather than occasional, or even less-than-occasional, handling and fingering.

The Commissioner asserts that the evidence did not support Tracey S.'s allegations that she had significantly diminished grip strength. In the decision, the ALJ supported the RFC limitation to frequent handling by noting Dr. Smejkal's evaluation. Dr. Smejkal reported that Tracey S.'s strength was 5/5 in all upper major muscle groups. (Tr. 367). Dr. Smejkal also reported that Tracey S. had no erythema, warmth, or swelling bilaterally in the hands and no heberden nodes. (Tr. 367). Dr. Smejkal found that Tracey S. had normal grip strength at 5/5 bilaterally with good fine finger manipulative abilities, including the ability to button, zip, and pick up coins. (Tr. 367). The ALJ also explained that he found the record supported Dr. Subramaniam Krishnamurthi's opinion that "handling and fingering are limited to frequent use." (Tr. 25). The ALJ indicated that Dr. Krishnamurthi's evaluation with respect to handling and

9

fingering was persuasive as it was expressed in terms consistent with the DOT and considered all of the evidence available as of the date he submitted the report. (Tr. 24-25).

The problem with Tracey S.'s argument is that even if the Dynamometer results reflected diminished grip strength, Dr. Smejkal's report reflected "normal grip strength at 5/5 bilaterally." (Tr. 367). This court does not have the requisite medical expertise to interpret the test results and rewrite Dr. Smejkal's medical report. Furthermore, the ALJ has relied on substantial evidence to support the limitation for frequent handling and fingering found in the RFC.

Furthermore, Tracey S. has argued that the ALJ erred in failing to consider her obesity in combination with her other impairments in the RFC discussion. At step two, the ALJ found that Tracey S. had the following severe impairments: lumbar degenerative disc disease with sciatica, fatty liver, poly-arthritis, inflammatory arthritis, right shoulder degenerative joint disease, obesity, hypertension, cardiac arrhythmia, mild degenerative changes of the right ankle, and right foot mild hallux valgus deformity with bunion formation. (Tr. 18). The ALJ has acknowledged Tracey S.'s obesity as a severe impairment. Tracey S. testified that she was 5'8 and weighed 380 pounds, giving her a body mass index of 42.6. (Tr. 19).

At step three, the ALJ indicated that "[i]n evaluating [Tracey S.'s] combination of impairments, [he] ha[d] assessed [her] obesity in considering any additional and cumulative effects related to obesity." (Tr. 19). Clearly, however, a boilerplate statement that Tracey S.'s obesity was considered in combination with her other impairments is not an adequate explanation. *See Parker v. Colvin*, 2016 WL 4435622 *4 (N.D. Ind. 2016) ("remanding where the ALJ made the single statement that "the claimant's obesity was considered in relation so the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling" and limited Plaintiff to light work with postural limitations. However, the ALJ did not create a

logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause").

An ALJ must "consider the exacerbating effects of a claimant's obesity on her underlying conditions when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. App'x 617, 623–24 (7th Cir. 2008). Even when a claimant does not explicitly list obesity as an impairment in her application for disability, the ALJ still must evaluate how obesity impacts the claimant's overall condition if the ALJ was put on notice that obesity could be a relevant factor. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000); *see also Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (stating "[a]n ALJ must factor in obesity when determining the aggregate impact of [a claimant's] impairments."). That is so because "[t]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244, at *4.

The Commissioner contends that the ALJ addressed evidence relating to Tracey S.'s obesity. Specifically, the Commissioner indicated that the ALJ cited treatment notes that reported a diagnosis of obesity and reflected BMI's of 41.6 and 41.37. (Tr. 21-22, 278, 298, 452). Also, the ALJ noted that Tracey S. experienced knee pain exacerbated by activity and that her weight had increased to 290 pounds (BMI of 44.09). (Tr. 23). However, aside from listing Tracey S.'s BMI various times throughout the decision, the ALJ offered no explanation on how her obesity factored into his assessment of the RFC. Even if the ALJ thought that Tracey S.'s obesity did not result in limitations on her ability to work, he should have explained how he reached that conclusion.

The consideration of Tracey S.'s obesity is important in this case because she experienced pain and tenderness in her right foot (Tr. 377-78), degenerative changes to her right

11

ankle (Tr. 492), pain in the tendons of the knees (Tr. 652), swelling in the feet and back after walking for one hour (Tr. 657), and low back pain (Tr. 661). Furthermore, the ALJ failed to explain that despite Tracey S.'s obesity she was able to sit for six hours in an eight-hour workday. Sitting for long periods of time, as sedentary work normally requires, may be difficult for those extremely obese. ***Browning v. Colvin,*** 766 F.3d 702, 707 (7th Cir. 2014).

The ALJ's failure to explain how the evidence, as a whole, and how the evidence he relied upon, led him to the limitations he assessed in the RFC, warrants remand. ***Briscoe ex rel. Taylor v. Barnhart***, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to explain how she arrived at her RFC under SSR 96-8p "... in itself is sufficient to warrant reversal of the ALJ's decision."). The bare statement that the ALJ had taken all of Tracey S.'s impairments, including obesity, into account does not show the court how, if at all, the ALJ incorporated Tracey S.'s obesity into his RFC. Accordingly, remand is required.

Tracey S. also has argued that the ALJ did not account for her medically determinable mental impairment of anxiety disorder in the RFC assessment. The ALJ found that Tracey S.'s "anxiety disorder did not cause more than minimal limitation in [her] ability to perform basic mental work activities and was therefore nonsevere." (Tr. 18). The ALJ found that Tracey S.'s anxiety disorder produced mild limitations in understanding, remembering, or applying information; no limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and no limitations adapting or managing herself. (Tr. 18). The ALJ indicated that because the medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas, it was non-severe. (Tr. 18).

Here, there is no indication that the ALJ considered the impact of Tracey S.'s anxiety disorder, even if non-severe, in assessing the RFC. Moreover, the ALJ did not explain his

rationale for not including non-exertional limitations in the RFC. Such an explanation is necessary for the court to trace the ALJ's reasoning. *See* **McMillion v. Berryhill**, 2017 WL 526514, at *8 (N.D. Ind. Feb. 8, 2017) (remanding where the ALJ failed to discuss the non-severe mental limitations in the context of formulating the RFC). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning." **Muzzarelli v. Astrue,** 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing **Haynes v. Barnhart,** 416 F.3d 621, 626 (7th Cir. 2005)). The ALJ has failed to "articulate, at least minimally, his analysis of the evidence so that the court can follow his reasoning." **Skarbek v. Barnhart**, 390 F.3d 500, 503 (7th Cir. 2004). These omissions also require remand.

Tracey S. has raised additional arguments regarding her subjective symptom allegations. However, since this matter is being remanded on the above issues, the court need not address the other arguments.

Tracey S. has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. **Briscoe v. Barnhart,** 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 20th day of February, 2020.

                                                             /s/ Andrew P. Rodovich
                                                              United States Magistrate Judge